RECEIVED
MAR 0 1 2018
AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

AJAY KAJLA,

        Plaintiff,

v.

U.S. BANK NATIONAL ASSOCIATION
AS TRUSTEE FOR CREDIT SUISSE FIRST
BOSTON MBS ARMT 2005-8, WELLS
FARGO, N.A., and PHELAN HALLINAN
DIAMOND & JONES PC,

        Defendants.

Civ. No. 17-8953

**OPINION**

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court on a motion to dismiss brought by Defendants U.S. Bank National Association, as Trustee for Credit Suisse First Boston MBS ARMT 2005-8 ("U.S. Bank") and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively "Defendants"). (ECF No. 12.) Plaintiff filed a late motion to amend "in lieu of" opposition. (ECF No. 13.) The Court has decided the Motions based on the written submissions and without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendants' Motion is granted and Plaintiff's Motion is denied.

## BACKGROUND

On October 23, 2017, Plaintiff Ajay Kajla ("Plaintiff") filed a Complaint (ECF No. 1) and Motion for Temporary Restraining Order (ECF No. 2) to prevent a sheriff's sale of his home scheduled for October 30, 2017. Plaintiff alleges that Defendants U.S. Bank; Wells Fargo; and

1

Phelan Hallinan Diamond & Jones PC engaged in a fraudulent scheme to deprive him of his home by unlawfully assigning his Mortgage and Note and then foreclosing on it without standing to do so. (Compl. ¶¶ 3.24, 52–65, ECF No. 1.) Plaintiff does not deny that he defaulted on his $1.4 million mortgage (*id.* ¶ 3.7), but rather challenges Defendants' authority to foreclose and adherence to proper foreclosure procedures (*see, e.g., id.* ¶¶ 3.34–.45). The Court reprises only the facts relevant to the determination of these Motions.

By way of default judgment, the Superior Court of New Jersey, Chancery Division, Monmouth County entered a Second Amended Final Judgment of foreclosure on the property in question in March 2015. (Conroy Cert., Ex. N, ECF No. 12-16.) Plaintiff moved to vacate the default judgment, which the Superior Court denied on April 9, 2015. (Conroy Cert., Ex. O, ECF No. 12-17.) Plaintiff appealed, and the Appellate Division affirmed on September 22, 2016. (Conroy Cert., Ex. S, ECF No. 12-21.) He then sought a stay from this Court to prevent a foreclosure sale of the property scheduled for October 30, 2017. (ECF Nos. 1, 2.) After hearing oral argument on October 27, 2017 at 11:00 AM, the Court denied emergent relief both because Plaintiff failed to meet the standards under the federal and local rules and because a stay of the sheriff's sale of the property would contravene the *Rooker-Feldman* doctrine. (ECF No. 8.)

With claims predicated almost exclusively on Defendants' standing to foreclose, Plaintiff pleads six Counts: (1) fraud in violation of "Regulation Z" [failure to respond to an information request pursuant to 12 U.S.C. § 2605(e)(1)(B)(ii)]; (2) violation of the Fair Debt Collection Practices Act ("FDCPA"); (3) violation of the New Jersey Consumer Fraud Act ("NJCFA") and the federal False Claims Act; (4) Racketeer Influenced and Corrupt Organizations Act ("RICO") violations; (5) fraud under various other federal statutes; and (6) fraud under N.J.S.A. 2C:28-7(a) (against Defendant Phelan only, and therefore not at issue on these Motions). Plaintiff seeks

2

damages (punitive, treble, and/or statutory) and counsel fees on all counts. Many of these allegations track the arguments Plaintiff raised in his state appeal. (*See* Conroy Cert., Ex. S.)

On December 1, 2017, Defendants moved to dismiss Plaintiff's Complaint on the basis of the *Rooker-Feldman* doctrine, New Jersey's entire controversy doctrine, and *res judicata* or collateral estoppel, or in the alternative, failure to state any claim upon which relief can be granted. (ECF No. 12.) Plaintiff did not file opposition by the deadline of December 19, 2017. However, on January 2, 2018, Plaintiff filed a Motion to Amend the Complaint "in lieu of resposne [sic] to motion to dismiss." (ECF No. 13.) Defendant opposes Plaintiff's Motion. (ECF No. 14.) In its discretion, the Court construes Plaintiff's Motion as a cross-motion for leave to amend, and now considers the Motions together.

## **LEGAL STANDARDS**

### I. Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a Defendant may move at any time to dismiss the Complaint for lack of subject matter jurisdiction on either facial or factual grounds. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In analyzing a facial challenge, a court "must consider only the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff." *Id.* (citing *Mortensen*, 549 F.2d at 891). In considering a factual challenge, however, a court "may consider evidence outside of the pleadings." *Id.* (citing *Mortensen*, 549 F.2d at 891). The plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, 2010 WL 3908567, at *2 (D.N.J. Sept. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

3

## II. Federal Rule of Civil Procedure 12(b)(6)

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Connelly v. Lane Const. Corp.*, 2016 WL 106159 (3d Cir. Jan. 11, 2016). However, the court may disregard any conclusory legal allegations. *Fowler*, 578 F.3d at 203. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). A complaint which does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Although a district court generally must confine its review to the pleadings on a Rule 12(b)(6) motion, *see* Fed. R. Civ. P. 12(d), "a court may consider certain narrowly defined types of material" beyond the pleadings. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). The Court may consider "matters incorporated by reference or integral to the claims, matters of which the Court may take judicial notice, matters of public record, orders, and other items of record in the case." *Blue Sky 1, LLC v. Jaguar Land Rover N. Am., LLC*, 2016 WL 6803081, at *4 (D.N.J. Nov. 16, 2016).

4

III. Motion for Leave to Amend

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend the pleadings should generally be given freely. *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is undue delay, bad faith, prejudice to the opposing party, or amending the pleading would be futile. *Id.*; *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434. "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin*, 227 F.3d at 121 (citing *Smith v. NCAA*, 139 F.3d 180, 190 (3d Cir. 1998)); *see also Pushkin v. Nussbaum*, 2014 WL 4543069, at *3 (D.N.J. Sept. 11, 2014) ("[O]ne test for whether an amended complaint would be futile is the standard for a motion to dismiss . . . .").

## ANALYSIS

I. Subject Matter Jurisdiction Under *Rooker-Feldman*

A. *The Rooker-Feldman Doctrine*

Defendants first move to dismiss the complaint for lack of jurisdiction under the *Rooker-Feldman* doctrine. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 416 (1923). Pursuant to this doctrine, federal district courts lack subject matter jurisdiction to conduct appellate-like review of state court judgments. *Marks v. Stinson*, 19 F.3d 873, 885 n.11 (3d Cir. 1994); *see also Moncrief v. Chase Manhattan Mortg. Corp.*, 275 F. App'x 149, 152 (3d Cir. 2008) (per curiam). There are four requirements for the doctrine to apply: "(1) the plaintiff lost in state court; (2) the plaintiff complains of injury caused by the state court judgment; (3) the state court judgment was rendered before the federal suit was filed; and (4) the plaintiff invites the district court to review and reject the state court judgment." *Gage v. Wells Fargo Bank, NA AS*, 521 F. App'x 49, 50–51 (3d Cir. 2013) (per curiam) (citing

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP* [*Great Western*], 615 F.3d 159, 166 (3d Cir. 2010)).[1] "[T]he crux of a *Rooker-Feldman* doctrine inquiry is whether it requires the federal court to look at the 'bona fides of the prior judgment,' not whether 'compliance with the second judgment would make it impossible to comply with the first judgment.'" *In re Phila. Entm't & Dev. Partners*, 879 F.3d at 503 (quoting *Great Western*, 615 F.3d at 169).

In the foreclosure context, the Third Circuit has repeatedly found that *Rooker-Feldman* bars a plaintiff's federal claims seeking redress of a state court foreclosure judgment. *See, e.g., Monclova v. US Bank NA*, 675 F. App'x 115, 117 (3d Cir. 2017) (per curiam); *Gage*, 521 F. App'x at 51; *In re Madera*, 586 F.3d at 232; *Moncrief*, 275 F. App'x at 152; *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005); *Ayres-Fountain v. E. Sav. Bank*, 153 F. App'x 91, 92 (3d Cir. 2005) (per curiam); *see also Otto*, 2016 WL 8677313, at *3 (collecting cases). "To the extent that [the] complaint can be read to include a request for the District Court to overturn or negate the state court judgment of foreclosure, . . . the *Rooker-Feldman* doctrine bars the suit." *Otto v. Wells Fargo Bank, N.A.*, 693 F. App'x 161, 163 (3d Cir. 2017) (per curiam).

---

[1] Courts in the Third Circuit, including past opinions of this Court, often rely on the "inextricably intertwined" standard to apply *Rooker-Feldman*: a district court cannot "entertain federal claims that (1) were previously adjudicated in state court or (2) are inextricably intertwined with a prior state court decision." *Otto v. Wells Fargo Bank, N.A.*, 2016 WL 8677313, at *3 (D.N.J. July 15, 2016), *aff'd*, 693 F. App'x 161 (3d Cir. 2017); *see, e.g., Spells v. Ocwen Loan Servicing, LLC*, 2017 WL 4155370, at *3 (D.N.J. Sept. 19, 2017); *Puche v. Wells Fargo NA*, 256 F. Supp. 3d 540, 545 (D.N.J. 2017) (citing *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009)), *appeal dismissed sub nom. Puche v. Wells Fargo Bank NA*, 2017 WL 7036523 (3d Cir. Nov. 30, 2017). However, in an effort to prevent lower federal courts from applying *Rooker-Feldman* too broadly, the Third Circuit clarified in 2010 that "[t]he phrase 'inextricably intertwined' does not create an additional legal test or expand the scope of *Rooker-Feldman* beyond challenges to state-court judgments." *Great Western*, 615 F.3d at 170; *accord In re Phila. Entm't & Dev. Partners*, 879 F.3d 492, 500 (3d Cir. 2018). Rather, the appropriate test for the jurisdictional analysis is the four-part inquiry outlined above. *See Great Western*, 615 F.3d at 169.

As an initial matter, Plaintiff suggests that *Rooker-Feldman* does not apply here because Plaintiff seeks damages, not return of the property or other injunctive relief. (*See* Pl.'s Mot. Amend at 3, ECF No. 13.)[2] However, as another judge of this Court has explained,

> Although Plaintiffs seek an award of monetary damages, this does not necessarily preclude an application of the *Rooker-Feldman* doctrine. . . . Rather, because certain of Plaintiffs' claims, in which they seek an award of monetary damages against Wells Fargo, can be construed as an implicit attack on the state court foreclosure judgment, the Court finds that the *Rooker-Feldman* doctrine is applicable without regard to the type of relief sought.

*Duffy v. Wells Fargo Bank, N.A.*, 2017 WL 2364196, at *5 (D.N.J. May 31, 2017) (finding NJCFA, breach of contract, and breach of the covenant of good faith and faith dealing claims were barred by *Rooker-Feldman*, but retaining subject matter jurisdiction over RESPA claims); *see also Amodol v. HSBC Bank USA, Nat'l Ass'n for Nomura Asset Acceptance Corp. Mortg. Pass-Through Certificates, Series 2006-AF1*, 2018 WL 354602, at *5 (D.N.J. Jan. 10, 2018).

*B. Application to this Case*

In view of this precedent, the first and third elements of the *Great Western* test are easily satisfied here: as to the first element, Plaintiff lost in state court, as Defendants won a foreclosure judgment, and as to the third element, the state court entered a second amended final judgment in the underlying foreclosure action in March 2015, more than two years before this federal lawsuit was filed. The second and fourth elements require more in-depth inquiry.

Applying the second element of the *Great Western* test, although raised under distinct statutory causes of action related to fraud or conspiracy, Counts One through Five chiefly allege

---

[2] The Court notes that Plaintiff's original motion for emergent relief sought a stay of the sheriff's sale of the foreclosed property. Plaintiff represented that *Rooker-Feldman* did not apply because the violations detailed in the Complaint "do not implicate the validity of the foreclosure judgment." (ECF No. 2 at 5.) The *Rooker-Feldman* implications of the particular relief sought were among the bases for the Court denying that motion. (*See generally* ECF No. 8.)

that Defendants improperly assigned and/or recorded the Mortgage or Note and lacked standing to foreclose. (*See, e.g.*, Compl. Count One ¶ 10 ("Defendants had divested themselves of the Note and Mortgage and therefore had no authority or standing to proceed with a foreclosure Sheriff Sale, all in an attempt to unlawfully take and convert the Plaintiff's property."); *id.* Count Two ¶ 30 ("[T] the claims of all Defendants should immediately be declared void."); *id.* Count Three ¶¶ 36–41 (questioning the validity of the mortgage and/or its assignment and, therefore, disclaiming Plaintiff's obligation to satisfy the indebtedness); *id.* Count Four ¶ 43 (alleging "the deceptive, fraudulent and unlawful taking, theft and attempted conversion of Plaintiff's property," thus impugning the validity of the mortgage, assignment, and foreclosure judgment); *id.* Count Five ¶ 64 ("The loan in this case was never consummated properly.").) As part of the foreclosure action, the state court determined that the mortgage was valid and that Defendants here had standing to foreclose. *Duffy*, 2017 WL 2364196, at *7 (D.N.J. May 31, 2017). Plaintiff thus complains of injury caused by the state court judgment, satisfying element two.

Furthermore, applying the fourth element of *Great Western*, Plaintiff is essentially inviting this Court to review and reject the state court judgment. *See Gage*, 521 F. App'x at 51 ("The complaint reveals the nature of Gage's claims against Wells Fargo: that the bank had no right to foreclose on the property and therefore committed 'criminal acts' by enforcing the foreclosure judgment (Counts I and IV). These claims are in essence an attack on the state court judgment of foreclosure."); *see also Perez v. Seterus, Inc.*, 2017 WL 5513687, at *3 (D.N.J. Nov. 16, 2017), *recons. denied*, 2018 WL 534159 (D.N.J. Jan. 24, 2018). Beyond raising claims that indirectly undermine the validity of the state court's judgment, Plaintiff expressly asks this Court to find that the state court erroneously misapplied state law. For example, Plaintiff alleges "the foreclosure action should be dismissed; Defendants never owned the note nor do Defendants

know the location of the original note." (Compl. ¶ 3.34.) Plaintiff asks this court to review and invalidate the state court judgment. (*Id.* ¶ 3.36 ("Plaintiff had expected the New Jersey Courts to follow the judicial law and the Constitution to protect the rights of the homeowner."); *id.* Count Five ¶ 63 ("The underlying foreclosure matter . . . should have been ruled in a similar manner.").) Such appellate review is barred by *Rooker-Feldman*, satisfying element four.

While the broad sweep of Plaintiff's Complaint appears barred from this Court's review, courts must carefully parse whether any of the plaintiff's claims do not complain of injury caused by the state court judgment, but rather injury caused solely by the defendant's conduct that occurred before or after the judgment of foreclosure was entered. *See, e.g.*, *Otto*, 693 F. App'x at 163; *Monclova*, 675 F. App'x at 117; *Alfaro v. Wells Fargo N.A.*, 2017 WL 4969334, at *3 (D.N.J. Nov. 1, 2017) (allowing claim for damages under a certain provision of RESPA to proceed, but finding claims under other provisions of RESPA, the NJCFA, and New Jersey's covenant of good faith and fair dealing barred by *Rooker-Feldman*); *Puche*, 256 F. Supp. 3d at 547 ("Violations of RESPA, or of Defendant's contractual duty of good faith and fair dealing, do not implicate the validity of the foreclosure judgment."); *Duffy*, 2017 WL 2364196, at *8 ("Unlike the previously discussed counts, Plaintiffs['] RESPA claims do not challenge the validity of the state court judgment.").

The only claims which require closer scrutiny here are those raised in Count One of Plaintiff's Complaint, which alleges "Fraud stemming from violations of Regulation Z." (Compl. Count One.) Unlike the other Counts, Count One seems to complain of alleged violations caused by Defendants' own conduct after the state court had already entered judgment. Plaintiff describes receiving inadequate responses from Defendants in reference to two correspondences: (1) on June 30, 2015, Plaintiff sent Defendants a Notice of Rescission/Cancellation concerning

the loan transaction pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635 and Regulation Z, 12 C.F.R. § 1026.23 (Compl. ¶ 3.37); and (2) on August 23, 2017, Plaintiff sent Defendants a letter which allegedly constituted a Qualified Written Request ("QWR") pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e)(1)(B)(ii). (Compl. ¶ 3.40, Count One ¶ 3.)[3] To the extent that this Count alleges injuries sustained exclusively from Defendants' conduct separate and apart from the state court's judgment in the foreclosure action, this Court would have jurisdiction over the claim(s) in Count One. *See, e.g., Duffy*, 2017 WL 2364196, at *8 ("[A] finding that Defendant violated RESPA would not overturn the state court judgment."); *Siljee v. Atl. Stewardship Bank,* 2016 WL 2770806, at *5 (D.N.J. May 12, 2016) ("Count 2 (RESPA violation) stands on a separate footing. It appears to be a modest claim for damages based upon failure to respond to a QWR. Such noncompliance with RESPA does not implicate the validity of the mortgage or Atlantic's standing. It is not inconsistent with the existence of a final judgment of foreclosure."). Accordingly, the Court holds that Plaintiff's claims against Defendants in Counts Two through Five are barred from this Court's consideration under *Rooker-Feldman* and must be dismissed on that basis, but the Court retains jurisdiction over Count One.

---

[3] The Court notes a number of irregularities in Count One. First, Plaintiff asserts the QWR was sent "under RESPA, TILA, and FDCPA" (Compl. Count One ¶ 3), but does not plead specific sections of TILA or FDCPA. Additionally, though Plaintiff describes his June 2015 Notice of Rescission (*id.* ¶ 3.37), he does not plead what, if any, response he received from Defendants nor style a specific count on this alleged TILA violation. Furthermore, though Count One is framed as a "fraud" claim, the Court understands Plaintiff to be pleading direct violations of federal law, not New Jersey common law fraud. However, it is unclear which federal statutes and regulations Plaintiff believes Defendants violated. Though Plaintiff names Regulation Z, which implements TILA, *see generally* 12 C.F.R. § 1026.1 *et seq.*, the statute actually cited in Count One is RESPA and its implementing regulation is Regulation X, *see generally* 12 C.F.R. § 1024.1 *et seq.*; *id.* § 1024.36. (*See* Defs.' Br. at 19, ECF No. 12-1 ("Plaintiff asserts a common law 'fraud' claim that is really a claim under the Real Estate Settlement Procedures Act ("RESPA").").)

10

II. *Res Judicata* and the Entire Controversy Doctrine

The Court next turns to whether *res judicata* and New Jersey's expansive Entire Controversy doctrine preclude consideration of Count One. *See In re Phila. Entm't & Dev. Partners*, 879 F.3d at 503 ("Usually, the final step in a *Rooker-Feldman* doctrine analysis is to 'apply state law to determine the preclusive effect of the prior state-court judgments.'" (quoting *Great Western*, 615 F.3d at 173)); *see also Ayres-Fountain*, 153 F. App'x at 93. Under federal law, *res judicata* determines whether a state court judgment has preclusive effect in a subsequent federal action. *See Sheldrick v. Wells Fargo Bank, N.A.*, 2016 WL 7325473, at *6–7 (D.N.J. Dec. 16, 2016); *see also Moncrief*, 275 F. App'x at 153. Three elements establish preclusive effect: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007) (quoting *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)). *Res judicata* not only applies to claims (or defenses) raised in the prior action, "but also claims that could have been brought." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008).

New Jersey's unique brand of *res judicata* is the Entire Controversy doctrine, "an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 (3d Cir. 1999); *see also Rycoline Prods., Inc.*, 109 F.3d at 886. In essence, the doctrine requires a party to bring all claims arising out of the same transaction or occurrence against all relevant parties or risk losing those claims forever in a subsequent action. *See Sheldrick*, 2016 WL 7325473, at *7 (citing *Rycoline Prods., Inc.*, 109 F.3d at 885). New Jersey Court Rule 4:64-5 defines permissible claims in mortgage foreclosure actions as those which are "germane" to the foreclosure—claims which "arise out of the mortgage that is the basis of the

foreclosure action." *Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortg. Corp.*, 446 F. App'x 469, 472 (3d Cir. 2011); *In re Mullarkey*, 536 F.3d at 229–30; *see also* N.J. Ct. R. 4:30A. The Entire Controversy doctrine thus bars this Court from reviewing germane claims.

Plaintiff's claims in Count One relate to inquiries Plaintiff made about "the true lender" and assignments of his mortgage. (*See* Compl. ¶¶ 3.37–.43; Compl., Ex. B, ECF No. 1.) Therefore, they arise out of the mortgage which was the subject of the state court foreclosure action and would be "germane" to the foreclosure. *See, e.g., Puche*, 256 F. Supp. 3d at 549 ("Claims that loan servicers violated their statutory duties under RESPA are germane to foreclosure proceedings on the mortgaged property."); *Siljee*, 2016 WL 2770806, at *10 ("Count 2, the RESPA claim, could likewise have been raised. Its subject matter is a QWR in which (it is implied) Siljee sought answers to his questions about Atlantic's standing to foreclose and the chain of title of the mortgage. It is therefore germane to the prior action.").

However, as Plaintiff asserts in his Motion to Amend, these claims became ripe only after a final judgment was entered in the state court action. (*See* Pl.'s Mot. Amend at 1–2 (citing *Alfaro*, 2017 WL 4969334, at *4–5 ("[T]he 'entire controversy doctrine does not apply to bar component claims that are unknown, unarisen, or unaccrued at the time of the original action.'"))); *compare Harris v. Wells Fargo Bank, N.A.*, 2017 WL 3701442, at *7 (D.N.J. Aug. 28, 2017) ("[B]ecause Plaintiff knew about her rescission claim before entry of final judgment in the State Foreclosure Action, she cannot raise it here."), *with Ogbebor v. J.P. Morgan Chase, N.A.*, 2017 WL 449596, at *13 (D.N.J. Feb. 2, 2017) (citation omitted) ("Clearly, the RESPA claim was unknown and unaccrued when the state court entered the uncontested foreclosure judgment. As a result, Plaintiffs did not have an opportunity to assert the RESPA claim in the state court action based on that conduct."). In the case at bar, Count One complains of conduct

12

that occurred *after* final judgment was entered in the foreclosure action; therefore, Plaintiff could not have raised these claims in the foreclosure action. Accordingly, the Court is not barred from hearing Count One under New Jersey's Entire Controversy doctrine or *res judicata*.[4]

III. <u>Failure to State a Claim in Count One</u>

As an alternative ground for dismissal, Defendants argue that Count One fails to state a claim for relief pursuant to Rule 12(b)(6). (*See* Defs.' Br. at 19–24.) RESPA requires a mortgage loan servicer who receives a QWR to conduct a reasonable investigation to satisfy the inquiry and respond to the request in a certain timeframe. *See* 12 C.F.R. § 1024.36(d).[5] However, a prerequisite for RESPA to apply is an existing mortgage. Defendants argue that Plaintiff's RESPA claim fails as a matter of law because when Plaintiff sent the QWR, the loan had already merged into the final judgment "and there was no longer a 'loan' under which to make a QWR inquiry." (Def.'s Br. at 19.) "Under New Jersey law, a mortgage loan is extinguished once a judgment of foreclosure is entered." *Perez*, 2017 WL 5513687, at *4 (citing *Genid v. Fannie Mae*, 2016 WL 4150455, at *3–4 (D.N.J. Aug. 2, 2016) (dismissing RESPA claim because the QWR and related communications occurred post-foreclosure)).

Here, the second amended foreclosure judgment was entered in March 2015, and both letters Plaintiff highlights in his Complaint were sent after that time. (*See* Compl. ¶ 3.37

---

[4] Having determined that the Entire Controversy does not bar consideration of Count One, the Court likewise rejects Defendants' arguments in favor of collateral estoppel (issue preclusion) and *res judicata* (claim preclusion) by the same reasoning. *See Ogbebor*, 2017 WL 449596, at *13 n.17 ("Plaintiffs could not have known that the RESPA claim accrued at the time of the foreclosure proceeding. Accordingly, res judicata does not bar Count Three."); *see also Alfaro*, 2017 WL 4969334, at *4–5 ("The Court finds that none of these doctrines and principles warrant dismissal of Count One. . . . the aforementioned reasons infect Wells Fargo's challenges under *res judicata* and collateral estoppel.").

[5] Plaintiff did not plead this provision, but cited the corollary statutory provision, 12 U.S.C. § 2605(e)(1)(B). *See supra* note 3 for a discussion of pleading irregularities in Count One.

13

(purported notice of rescission sent in June 2015); *id.* ¶ 3.40 (purported QWR sent in August 2017); *see also* Compl., Ex. B.) By the time Plaintiff sent his letters, the mortgage loan was already extinguished and Plaintiff could not avail himself of RESPA's protections. Count One fails to state a claim and must be dismissed.[6]

IV. Leave to Amend

Plaintiff has cross-moved for leave to amend and supplied the Court with a Proposed Amended Complaint (ECF No. 13). At the outset, the Court notes that Plaintiff's submission does not comply with Local Civil Rule 15.1(a)(2), indicating "in what respect(s) it differs from the pleading which it proposes to amend, by bracketing or striking through materials to be deleted and underlining materials to be added." L. Civ. R. 15.1(a)(2) (amended May 2017). The Court has thus compared the present operative Complaint (ECF No. 1) to the Proposed Amended Complaint (ECF No. 13), finding changes or additions reflected in proposed paragraphs 3.10–.11, 3.19–.30, 3.41, 3.47, 3.53, 3.56–.57; Count One paragraphs 5–10, 14–22; Count Three paragraph 45; and Count Five paragraph 77. Paragraphs 3.19–.30 reference a series of exhibits (A through L) which were not enclosed with the Proposed Amended Complaint and do not otherwise appear on the docket.

Reprising most of their arguments from the Motion to Dismiss, Defendants oppose Plaintiff's Motion to Amend, arguing that the proposed amendment is futile. (*See generally* ECF No. 14.) Having reviewed the specific alterations, none of Plaintiff's changes disturb the Court's earlier conclusion with respect to the applicability of *Rooker-Feldman* to Counts Two through

---

[6] Having found dismissal warranted, the Court need not consider Defendants' additional arguments in support of dismissing Count One, including that Defendants do not fall under RESPA's definition of a servicer; that Plaintiff's purported QWR was improper; or that there is no causal link to support a claim for specific damages under RESPA. (*See* Defs.' Br. at 20–24.)

14

Five. In these Counts, Plaintiff continues to allege that Defendants lacked standing to foreclose and improperly assigned his mortgage. (*See, e.g.*, Proposed Am. Compl. ¶¶ 3.41, 3.47, 3.57; Count Three ¶ 45; Count Five ¶ 77, ECF No. 13.) Plaintiff is denied leave to amend Counts Two through Five because amendment is futile.

The only remaining question is whether Plaintiff's proposed amendment of Count One would survive a motion to dismiss and therefore should be granted. The amendment addresses some of the earlier-noted irregularities, where Plaintiff's factual allegations suggested Defendants had violated Regulation X (RESPA), but the Count was pled under Regulation Z (TILA). To the extent that Count One continues to assert that Defendants violated RESPA by providing a deficient response to Plaintiff's August 2017 letter, it fails as a matter of law (*see supra* Section III) and leave to amend is denied as futile.[7] However, the amended version now includes additional facts relating to applicability of Regulation Z and Plaintiff's June 2015 purported Notice of Rescission. (*See* Proposed Am. Compl. Count One ¶¶ 14–22.) It is not clear whether Plaintiff is asserting a claim for rescission under TILA, or alternatively a claim for damages under TILA for Defendants' failure to respond to the Notice of Rescission, *see, e.g., Rodrigues v. Wells Fargo Bank, N.A.*, 2016 WL 8674615, at *3, *9 (D.N.J. Dec. 23, 2016) (describing similar claims), *recons. denied*, 2017 WL 2345559 (D.N.J. May 30, 2017). However, either plausible interpretation of the claim would fail to survive a motion to dismiss.

Plaintiff cites Supreme Court precedent for the proposition that "rescission is effected when the borrower notifies the creditor of his intention to rescind. It follows that, so long as the

---

[7] Plaintiff proposes amending Count One to assert that communications with America Servicing Company, "the servicer," implicated the QWR provisions of RESPA. (*See* Proposed Am. Compl. ¶¶ 3.5, 3.19–.30, Count One ¶¶ 5–6.) This amendment must be denied as futile. America Servicing Company is not a defendant here, and Plaintiff does not allege he sent these letters to Defendants. The added facts do not change the viability of a RESPA claim against Defendants.

15

borrower notifies within three years after the transaction is consummated, his rescission is timely." *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015). Plaintiff misunderstands this precedent, which has limited applicability to his case. *See, e.g., Batista v. Countrywide Home Loans, Inc.*, 2015 WL 4022080, at *2 n.1 (D.N.J. June 29, 2015) ("That case, however, holds that a borrower must give written notice . . . within (at most) three years after the date the loan was consummated. Plaintiff[']s loan was consummated some twelve years ago. That limitations period aside, defenses based on the validity of the mortgage come too late.")

Plaintiff acknowledges that his loan is a mortgage securing "his home"[8] as collateral (Proposed Am. Compl. ¶ 1.1), dated April 29, 2005 (*id.* ¶¶ 3.1–.3). The three-year limitations period therefore expired in 2008. Additionally, to the extent Plaintiff seeks damages instead of rescission, "a claim for monetary damages under TILA must be brought within one year of the loan closing." *Barel v. Green Tree Servicing, LLC*, 2017 WL 3055512, at *3 (D.N.J. July 19, 2017); *see, e.g., Otto*, 693 F. App'x at 163; *Jacobowitz v. M & T Mortg. Corp.*, 372 F. App'x 225, 228 (3d Cir. 2010) (per curiam). Under either reading of the proposed amendment, Count One is time-barred. Accordingly, leave to amend is denied as futile.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted. Plaintiff is denied leave to amend. An appropriate order will follow.

Date: 3/1/18

ANNE E. THOMPSON, U.S.D.J.

---

[8] If Plaintiff's mortgage is a residential mortgage transaction as defined in 15 U.S.C. § 1635(e)(1), rescission would not be available. *See, e.g., Chambers v. Wells Fargo Bank, N.A.*, 2016 WL 3533998, at *7 (D.N.J. June 28, 2016).

16