## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AJAY KAJLA,<br><br>                Plaintiff,<br><br>   v.<br><br>U.S. BANK NATIONAL ASSOCIATION<br>AS TRUSTEE FOR CREDIT SUISSE FIRST<br>BOSTON MBS ARMT 2005-8, WELLS<br>FARGO, N.A., PHELAN HALLINAN<br>DIAMOND & JONES PC,<br><br>                Defendants. | Civ. No. 17-8953<br><br><br>OPINION |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court on remand from the U.S. Court of Appeals for the Third Circuit for the limited purpose of determining whether Defendant Phelan Hallinan Diamond & Jones PC ("Phelan") was served with the Complaint. (Remand at 2, ECF No. 25.) The Court conducted an evidentiary hearing on March 21, 2019. (ECF No. 33.) After considering all evidence presented, the Court concludes that Defendant Phelan was not served with the Complaint.

## BACKGROUND

### I.     Proceedings Prompting Need for Evidentiary Hearing

The underlying action stems from an allegation that Defendant Phelan, among others, engaged in a fraudulent scheme to deprive Plaintiff Ajay Kajla ("Plaintiff") of his home by unlawfully assigning his mortgage and note and then foreclosing on it without standing to do so;

Plaintiff seeks to prevent a sheriff's sale of his home. (Compl. ¶¶ 3.24, 52–65, ECF No. 1.) On March 1, 2018, the Court granted the Motion to Dismiss brought by Defendants U.S. Bank National Association and Wells Fargo, N.A. (ECF Nos. 15–16.) Plaintiff appealed this decision on March 30, 2018. (ECF No. 19.) On August 13, 2018, while the appeal was still pending, the Court dismissed Defendant Phelan from the action because Defendant Phelan had never appeared, Plaintiff had not moved for entry of default or default judgment, and Plaintiff had failed to prosecute pursuant to Local Civil Rule 41.1(a). (ECF No. 24.)

On September 18, 2018, the Third Circuit advised Plaintiff that "[i]t [was] unclear from the District Court docket whether [Defendant Phelan] was ever served with the [C]omplaint" and ordered Plaintiff to "file a written response addressing whether this party was served and how service affects jurisdiction in this matter." (Show Cause Order at 1, Court of Appeals Docket No. 18-1718 (Sept. 18, 2018).) On October 8, 2018, Plaintiff's counsel, Joshua Thomas, responded:

> [T]here were actually 2 times [Defendant] Phelan was served in the underlying case . . . . I personally hand delivered the [C]omplaint and the emergency motion for temporary restraining order on October 26 [*sic*], 2017. Ultimately, after several email communications from opposing counsel in the matter, I sent it to a process server to be served again, and it ultimately was served on or about November 2, 2017.

(Pl.'s Resp. at 1, Court of Appeals Docket No. 18-1718 (Oct. 8, 2018).) Mr. Thomas also attached an affidavit of service purporting to show that Defendant Phelan was served on November 2, 2017 at 11:00 AM ("Plaintiff's Proffered Affidavit"). (Ex. A, Court of Appeals Docket No. 18-1718 (Oct. 8, 2018); *see also* Pl.'s Ex. 5.)

On December 4, 2018, Defendant Phelan filed a letter to the Third Circuit in response. (Def.'s Letter, ECF No. 25-1.) Defendant Phelan alleged that Plaintiff's Proffered Affidavit "is a forgery, falsely appearing to show that [Defendant Phelan's] attorney Brian Yoder, Esq., was

served with the District Court Complaint on November 2, 2017." (*Id.* at 2.)  Mr. Thomas filed a

response on January 9, 2019 (ECF No. 25-3) and Defendant Phelan filed a reply on January 14,

2019 (ECF No. 25-4).  On February 27, 2019, the Third Circuit remanded this case to this Court

"for the limited purpose of determining whether [Defendant Phelan] was served with the

[C]omplaint and addressing the allegations raised by counsel regarding service."  (Remand at 1.)

On March 21, 2019, this Court conducted an evidentiary hearing to answer the Third Circuit's

question.  Counsel for Plaintiff, Joshua Thomas, and counsel for Defendant Phelan, Kenneth

Goodkind, presented the following evidence.[1]

## II.     Facts Surrounding Service of Process

### A.     *Plaintiff's Evidence*

Plaintiff contends that Defendant Phelan waived service of process and, alternatively, that

he effected proper service on Defendant Phelan.  First, on October 25, 2017,[2] Mr. Thomas

received an automatically generated email from the CM/ECF system notifying him that deadlines

had been scheduled for Plaintiff's Motion for Temporary Restraining Order.  (Pl.'s Ex. 1.)  Mr.

Thomas then forwarded this email—with no message other than Mr. Thomas's signature block—

to Elizabeth Yorty and Meghan Hilyard, employees of Defendant Phelan.  (*Id.*)  Ms. Yorty, a

paralegal, responded, "We're waiting for our client to confirm who will be handling this matter.

Feel free to forward me any additional notices received."  (*Id.*)  Mr. Thomas argues that this

response, sent and received on October 25, 2017, constituted a waiver of service of process.

---

[1] On March 25, 2019, Defendant Phelan filed a letter in further support that it was not served in this case.  (ECF No. 34.)

[2] Although Plaintiff originally purported to the Third Circuit that Defendant Phelan waived service on October 26, 2017 (Pl.'s Resp. at 1), Plaintiff presented evidence during the evidentiary hearing that this purported waiver occurred on October 25, 2017 (Pl.'s Ex. 1).

Second, on October 30, 2017, Mr. Thomas sent an email to Status, LLC ("Status"), a third-party process server, requesting that Status serve Defendant Phelan at 400 Fellowship Road, Suite 100, Mount Laurel, NJ 08054.  (Pl.'s Ex. 3.)  On that same day, Status responded to Mr. Thomas by email that it had received Mr. Thomas's request and that it "will process for service."  (Pl.'s Ex. 4.)  Mr. Thomas offers Plaintiff's Proffered Affidavit purporting to show that Sharon McCabe Villa served Defendant Phelan on November 2, 2017 at 11:00 AM at the Mount Laurel address.  (Pl.'s Ex. 5.)

B.    *Defendant Phelan's Evidence*

Defendant Phelan contends that Plaintiff never effected service of process and, in fact, Plaintiff's Proffered Affidavit was forged.  Defendant Phelan offered three witnesses: (1) Sharon McCabe Villa, the process server; (2) Brian Yoder, partner at Defendant Phelan; and (3) Angela Chirichello, owner of Status.

1.    Sharon McCabe Villa's Testimony

Ms. Villa, the process server listed on Plaintiff's Proffered Affidavit, testified that the affidavit is incorrect and essentially forged.  She primarily discussed three pieces of evidence to corroborate her testimony.

First, Ms. Villa offered what she views as the true and accurate affidavit of service, which was served upon Nationstar Mortgage LLC at 100 Princeton South Corporate Center, Suite 160, Ewing, New Jersey 08628, as a part of *Hua et al. v. First National Bank of Arizona et al.*, Civil Docket No. 17-7662 (D.N.J.) ("Defendant's Proffered Affidavit").  (Def.'s Ex. 1.)  The case number, parties to the case, and description of person served are all different between Plaintiff's Proffered Affidavit and Defendant's Proffered Affidavit; and, only Defendant's Proffered Affidavit is a "certified true copy" signed by Status.  (*Compare* Pl.'s Ex. 5, *with* Def.'s Ex. 1.)

But the two affidavits also contain many of the same characteristics: the same date of service, time of service, court from which the case derived, service company, server, job serial number, person who requested the service (Mr. Thomas), and even notary public. (*Compare* Pl.'s Ex. 5, *with* Def.'s Ex. 1.) Ms. Villa testified that no two service jobs can have the same job serial number and, of course, she could not have served two different parties at the same time on the same day in two different places (Mount Laurel in Burlington County and Ewing in Mercer County).

Second, Ms. Villa testified about her Field Sheets. (Def.'s Ex. 2.) For every document served, a Field Sheet is generated that includes the unique job serial number and handwritten notes from the server pertaining to the date, time, and description of the person served. The Field Sheets indicate that on November 2, 2017, Ms. Villa served her first papers at 7:54 AM in Trenton. (*See id.* at 1.) She then served papers at 8:45 AM in Trenton, 9:14 AM in Hamilton, and 10:15 AM in Trenton. (*See id.* at 2–4, 6, 8, 10, 12, 14.) Ms. Villa then served several papers at or around 11:00 AM, all at the same location, 100 Princeton South Corporate Center, Suite 160, Ewing, New Jersey 08628, on, among others, Nationstar Mortgage LLC. (*Id.* at 16–23.) Ms. Villa then served papers at various other locations in the area: 11:33 AM in Morrisville (Pennsylvania), 2:40 PM in West Trenton, 5:09 PM in Hamilton, 5:33 PM in Trenton, 5:48 PM in Trenton, 6:58 PM in Ewing, 7:22 PM in Lawrence, 7:43 PM in Trenton, and 8:22 PM in Robbinsville. (*Id.* at 24–34.) Ms. Villa testified that she did not serve any other papers on this day.

Finally, Ms. Villa testified about Defendant's Exhibit 3, which contains an affidavit of service for every job listed in her Field Sheets. These Field Sheets support Ms. Villa's testimony that she served papers only in or near Mercer County on November 2, 2017 and, more

specifically, that at 11:00 AM, Ms. Villa was serving papers at 100 Princeton South Corporate Center, Suite 160, Ewing, New Jersey 08628.  Upon cross examination, however, Plaintiff exposed that these affidavits do not correspond perfectly with the Field Sheets: (1) only one Field Sheet exists in regard to service on State Farm Insurance Company but the Exhibit includes two affidavits of service, each stamped as a certified true copy; and (2) the affidavit of service in regard to service on Liberty Insurance Company is missing from the Exhibit.

### 2. Brian Yoder's Testimony

Mr. Yoder, the supervising litigation attorney at Defendant Phelan, testified about Defendant Phelan's standard operating procedure regarding acceptance of service.  He explained that only employees of Defendant Phelan have access to the building and that all visitors, like third-party process servers such as Ms. Villa, are directed to the receptionist in the lobby and must sign a visitor's log.  If a process server attempts service, the receptionist is instructed to call Mr. Yoder, who then greets the server in the lobby.

Mr. Yoder testified that neither Ms. Villa nor anyone else attempted to serve Defendant Phelan on November 2, 2017.  Mr. Yoder was in the office all day (*see* Def.'s Ex. 4 (attorney schedule created contemporaneously)), actively checking his email, but no one ever informed him that service was being attempted, as required by standard operating procedure.  No process server ever signed the visitor's log on November 2, 2017.  (*See* Def.'s Ex. 5.)

### 3. Angela Chirichello's Testimony

Ms. Chirichello, the owner of Status, testified that Plaintiff's Proffered Affidavit is inaccurate.  She testified that Ms. Villa's "territory" in November 2017 was Mercer County and that Status had a separate server for Burlington County.  Although she agreed that Plaintiff's

Exhibits 3 and 4 show communications of the type in which Status typically engages, she has no records of receiving or sending these emails or any other request to serve papers in this action.

## LEGAL STANDARD

Rule 4 of the Federal Rules of Civil Procedure sets forth the requirements for service of process, and "[t]he party asserting the validity of service bears the burden of proof on that issue." *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993). The summons, along with a copy of the complaint, must be served within ninety days, in accordance with Rule 4(m). Fed. R. Civ. P. 4(c)(1). A plaintiff may not serve a defendant personally; rather, only a non-party may effect service by delivering a copy of the summons and complaint to the defendant personally or delivering a copy of each to an authorized agent of the defendant. Fed. R. Civ. P. 4(c)(2), (e). Rule 4(*l*) requires that the server execute an affidavit of service to prove that she has effected service.

Alternatively, a plaintiff may request the defendant to waive service of process in accordance with Rule 4(d). The plaintiff must notify the defendant that an action has been commenced and accompany that notice with a request for waiver. The notice and request must:

(A) be in writing . . . ;

(B) name the court where the complaint was filed;

(C) be accompanied by a copy of the complaint, 2 copies of the waiver form appended to this Rule 4, and a prepaid means for returning the form;

(D) inform the defendant, using the form appended to this Rule 4, of the consequences of waiving and not waiving service;

(E) state the date when the request is sent;

(F) give the defendant a reasonable time . . . to return the waiver; and

(G) be sent by first-class mail or other reliable means.

Fed. R. Civ. P. 4(d)(1).  The burden to take these steps remains with the plaintiff.  *See Carmen v. City of Pleasantville*, 2007 U.S. Dist. LEXIS 42410, at *9 (D.N.J. June 11, 2007).

## DISCUSSION

Plaintiff failed to carry his burden to prove either that Defendant Phelan waived service or that Plaintiff properly effected service on Defendant Phelan.  First, in regard to waiver, Plaintiff contends that Mr. Thomas's email on October 25, 2017 constituted the sufficient notice and request required by Rule 4 and that Ms. Yorty's response on the same day constituted a sufficient waiver.  (*See* Pl.'s Ex. 1.)  But Mr. Thomas's communication failed to include numerous items required by Rule 4(d)(1) of the Federal Rules of Civil Procedure.  Mr. Thomas merely forwarded an automatically generated email from the CM/ECF system notifying him that deadlines had been scheduled for Plaintiff's Motion for Temporary Restraining Order.  Mr. Thomas did not provide a copy of the Complaint, summons, or waiver form appended to Rule 4. He also did not convey any reasonably discernible variant of a request; in fact, he articulated no message at all, leaving his signature block as the only message.

Regardless, however, Ms. Yorty's response also falls short of a waiver.  (*See* Pl.'s Ex. 1.) Mr. Thomas knew or should have known that Ms. Yorty, a paralegal, was not an agent authorized to waive service.[3]  Even if she were authorized though, Ms. Yorty's precise response—"We're waiting for our client to confirm who will be handling this matter.  Feel free to forward me any additional notices received."—does not rise to the level of objective assent to Mr. Thomas's supposed request.  Presumably, Mr. Thomas also believed that this communication was insufficient—otherwise he would not have attempted service through a

---

[3] Ms. Yorty's position as a paralegal is evident from the signature block in her response email. (*See* Pl.'s Ex. 1.)

8

different means only a few days later.

Plaintiff also failed to properly effect service through Ms. Villa, a third-party process server who works for Status. Plaintiff's Proffered Affidavit purports to show that Ms. Villa served Defendant Phelan on November 2, 2017 at 11:00 AM in Mount Laurel, but the legitimacy of this document is suspect. Not only does Defendant's Proffered Affidavit conflict as it purports to show that Ms. Villa was serving papers in Ewing on November 2, 2017 at 11:00 AM, but Defendant Phelan offers numerous witnesses to undermine the reliability of Plaintiff's Proffered Affidavit.

First, Ms. Villa testified that she was serving papers all day in or near Mercer County on November 2, 2017; she testified specifically that she was nowhere near Mount Laurel. In fact, she testified that Mercer County and its surrounding area was her "territory" in November 2017—a notion that Ms. Chirichello also supported in her testimony. Ms. Villa's Field Sheets and corresponding affidavits of service, created contemporaneously, also demonstrate that she was serving papers all day in or near Mercer County. (*See* Def.'s Exs. 2, 3.)

Second, Mr. Yoder testified that, per Defendant Phelan's standard operating procedure, he would have been notified about any attempt of service on November 2, 2017. Although he seems to be the served-upon person described in Plaintiff's Proffered Affidavit, Mr. Yoder testified that he was in the office all day and that no one attempted service regarding any case—indeed, no process server ever signed the visitor's log on November 2, 2017. (*See* Def.'s Exs. 4, 5.) Ms. Chirichello's testimony corroborates this notion as she has no records of receiving any request to serve Defendant Phelan on any day in regard to this action.

Plaintiff's Proffered Affidavit and Defendant's Proffered Affidavit purport to show that the same server, on the same day, at the same time, operating under the same unique job serial

number served different people, in different cases, in different counties.  But the evidence presented overwhelmingly verifies Defendant's Proffered Affidavit and thus, necessarily, undercuts the integrity of Plaintiff's Proffered Affidavit.  The salient link between the two affidavits is that Mr. Thomas was the requesting attorney in both circumstances—this common denominator does not seem to be coincidental.  Because all of the evidence presented undermines the authenticity of Plaintiff's Proffered Affidavit, Plaintiff has failed to carry its burden that he effected proper service of process on Defendant Phelan.

## **CONCLUSION**

For the reasons stated herein, Defendant Phelan was not served with the Complaint.  An appropriate order will follow.


Date: 03/27/2019                                           */s/ Anne E. Thompson*_____
                                                                  ANNE E. THOMPSON, U.S.D.J.